TORBERT v. CLOUGH.

1. **Intoxicating Liquors:** UNLAWFUL SALE BY PHARMACIST: RECOV-
ERY OF MONEY PAID. Under the statute in force in 1883 and 1884, a
registered pharmacist who held no permit from the supervisors of the
county could not lawfully sell intoxicating liquors at wholesale; and
where such liquors were so sold, *held* that, under Code, § 1550, the
purchaser could recover of the seller all payments made for such liquor.
[ADAMS, CH. J., *dissenting*.]

*Appeal from Chickasaw District Court.*

MONDAY, JUNE 27.

ACTION upon an account for drugs and medicines sold by
Torbert, plaintiff and appellant, to defendant, of the value
of $111.85. The answer admits the allegations of the peti-
tion, and alleges, as a counter-claim, that, in 1883 and 1884,
plaintiff sold and delivered to defendant large quantities of
intoxicating liquors, the sale of which is forbidden by the
statutes of the state; that plaintiff and defendant are both
residents of this state, and that defendant paid to plaintiff
$454.41 for the intoxicating liquors so unlawfully sold; and
she asks judgment for that sum. The cause was tried with-
out a jury, and judgment was rendered against plaintiff for
the sum of $258.71, and costs, from which he appeals.

*Graham & Cady* and *J. R. Bane*, for appellant.

*Hiram Shaver*, for appellee.

BECK, J.— I. It is shown by an agreed statement of facts
that during the years 1883 and 1884, the time of the sales
of the intoxicating liquors in question, plaintiff was a drug-
gist and pharmacist, duly registered under the laws of the
state; that prior to obtaining a permit from the board of
supervisors he sold defendant intoxicating liquors, and
received in payment therefor $412.56, and after that time he
sold to defendant such liquors, and received payment in the
sum of $30.92. The defendant was not a registered drug-
gist and pharmacist, and had no permit from the board of
supervisors for selling intoxicating liquors. She was doing

business as a druggist, which was known to plaintiff, and he supposed she was duly registered. It is shown by the evidence of the plaintiff that a portion of the liquor sold was alcohol of too high proof for use as a beverage, but that it could be so used by reducing it. It appears that the plaintiff conducted business in Dubuque, and from that city the liquors were sent by railroad to defendant in Chickasaw county, where she was doing business. The liquors were sold at wholesale, and defendant conducted a retail business. It is not shown that plaintiff used any diligence in order to ascertain whether defendant purchased the liquors in good faith, to be used for a lawful purpose.

II. The following question arises upon these facts, the determination of which is decisive of the case: Under the statute in force in 1883 and 1884, could a registered pharmacist, who held no permit from the supervisors of the county, lawfully sell intoxicating liquors at wholesale? Under chapter 6, tit. 11, of the Code, all sales of intoxicating liquors were unlawful except those made by persons holding permits for specified purposes declared to be lawful. [Section 1523.] Under chapter 75, Acts of the Eighteenth General Assembly, registered pharmacists were authorized to sell intoxicating liquors at retail, and in no other way. Section 1 forbids any one not a registered pharmacist " to conduct any pharmacy, drug-store, apothecary shop, or store for the purpose of retailing, compounding or dispensing medicines, or poisons for medical use, except as hereinafter provided." Section 8 provides that " apothecaries registered as herein provided shall have the right to keep and sell, under the restrictions as herein provided, all medicines and poisons authorized by the National American or United States dispensatory and pharmacopœa as of recognized medical utility." Section 9 declares that it shall not be lawful " for any licensed or registered druggist or pharmacist to retail or sell or give away any alcoholic liquors or compounds as a beverage."

It clearly appears that the first section of the statute applies restrictions to retailing medicines and poisons, and

to no other kind of selling. Section 8 doubtless confers the right to sell intoxicating liquors, if they are of "recognized utility." But the authority conferred is applicable to the kind of sales comtemplated in section 1, namely, sales at retail. It surely cannot be claimed that the sections, considered together, permit druggists not registered to sell at wholesale all medicines and poisons except intoxicating liquors. The clause of section 9 quoted above applies to the sale in any form of intoxicating liquors as a beverage which is not authorized by statute, either at retail or wholesale. It clearly appears from this presentation of the statutes that sales at wholesale, of intoxicating liquors for permitted purposes, were unlawful, except when made by persons holding a permit from the supervisors of the county. The plaintiff had no permit. The sales to defendant, being at wholesale, were unlawful. Other facts in the case, which we have stated, cut no figure in the case, and need not be considered. See *State v. Bissell*, 67 Iowa, 616, which holds that under chapter 143, Laws of 1884, licensed pharmacists cannot sell intoxicating liquors without a permit. The sales of intoxicating liquors made by plaintiff to defendant being in violation of the statute, the defendant can recover from plaintiff all payments made by her for such liquors. (Code, § 1550.)

The abstract before us presents no ground upon which we can interfere with the finding by the district court as to the amount which defendant is entitled to recover. The judgment, therefore, must be                    AFFIRMED.

ADAMS, CH. J., *(dissenting.)* The liquors in question were sold by a registered pharmacist, for the purposes of medicine, and there is no evidence that they were not used for that purpose. The opinion of the majority, as I understand it, proceeds upon the theory that the plaintiff would have been guilty even if they had been used for that purpose, because he held no permit from the board of supervisors. In my opinion, such permit was not necessary prior to July 4, 1884, though the goods where sold at wholesale, and the sales in question do not appear to have been made after that time.